FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 02, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALLAN M., <br><br>　　　　Plaintiff, <br><br>　　　　v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>　　　　Defendant. | No. 4:17-CV-05147-JTR <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 16. Attorney D. James Tree represents Allan M. (Plaintiff); Special Assistant United States Attorney Michael Sinclair Howard represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on May 20, 2013 and March 12, 2013 respectively, Tr. 81-82, alleging disability since December 31, 2011, Tr. 158, 165,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

due to back problems, testicular problems, a crushed chest, and masses, Tr. 186. The applications were denied initially and upon reconsideration. Tr. 124-27, 129-31.[1] Administrative Law Judge (ALJ) Larry Kennedy held a hearing on July 15, 2015 and heard testimony from Plaintiff and vocational expert Daniel McKinny. Tr. 41-80. Plaintiff was unrepresented at the hearing. Tr. 44-49, 155. The ALJ issued an unfavorable decision on April 18, 2016. Tr. 23-35. The Appeals Council denied review on July 26, 2017. Tr. 1-6. The ALJ's April 18, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on March 28, 2017. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 45 years old at the alleged date of onset. Tr. 158. He attended special education classes in school and completed the eleventh grade in 1984. Tr.

---

[1]The record contains a denial of both SSI and DIB claims following the initial application. Tr. 124-27. However, the record only contains a denial of the SSI request for reconsideration. Tr. 129-31. The ALJ's decision addresses the DIB application, stating that it too was denied at reconsideration. Tr. 23. Without the DIB reconsideration denial in the record, it is unclear if the ALJ had jurisdiction under 20 C.F.R. § 404.930 to consider the DIB claim. Plaintiff fails the challenge the ALJ's jurisdiction. ECF No. 14. This Court will consider the claim as if the ALJ did have jurisdiction to consider the DIB claim. However, upon remand, the ALJ will supplement the record with the reconsideration denial of the DIB claim, or if no denial has occurred, he will refer the DIB claim back to the appropriate State agency to make a reconsideration determination.

187. His reported work history includes the jobs of roofer and painter. *Id*. Plaintiff reported that he stopped working on December 31, 2011 due to his conditions. Tr. 186.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie

case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 18, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2011, the alleged date of onset. Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar spine degenerative disc disease; mood disorder vs. depressive disorder; learning disorder; anxiety disorder; personality disorder; and substance abuse disorder. Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 27.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a full range of light work with the following limitations:

> The claimant can occasionally balance, stoop, kneel, and crouch. He cannot climb or crawl. The claimant can perform simple, routine tasks and follow short, simple instructions. The claimant can do work that

> needs little or no judgment and can perform simple duties that can be learned on the job in a short period.

Tr. 29. The ALJ identified Plaintiff's past relevant work as construction worker I and roofer and concluded that Plaintiff was not able to perform this past relevant work. Tr. 34.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform. Tr. 34-35. The ALJ made this determination using the Medical-Vocational Rule 202.18. *Id*. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from December 31, 2011, through the date of the ALJ's decision. Tr. 35.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the opinion evidence, (2) failing to make a proper step two determination, (3) failing to develop the record, and (4) failing to properly address Plaintiff's symptom statements.

## DISCUSSION

**1. Opinion Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Tae-Im Moon, Ph.D., Jan Kouzes, Ed.D., Jason Roberts, ARNP, and Candice Webb, M.S., M.H.P. ECF No. 14 at 10-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant;

and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

When addressing opinions from medical providers, who are not considered acceptable medical sources, *see* 20 C.F.R. §§ 404.1502(a), 416.902(a) (defining acceptable medical sources), the ALJ can only reject their opinions by providing reasons germane to each provider. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th

Cir. 2014); s*ee also* 20 C.F.R. §§ 404.1527(f), 416.927(f) (requiring an ALJ to address opinions from non-acceptable medical sources).

### A. Tae-Im Moon, Ph.D.

Dr. Moon examined Plaintiff for the Washington Department of Social and Health Services (DSHS) on three separate occasions. In the first, dated August 1, 2012, Dr. Moon diagnosed Plaintiff with major depressive disorder recurrent with psychotic features, rule out bipolar disorder, anxiety disorder, cannabis abuse, learning disorder not otherwise specified by history, and personality disorder. Tr. 257. Dr. Moon opined that Plaintiff had a marked limitation in six basic work activities and moderate limitations in four additional basic work activities. Tr. 258. The ALJ gave this opinion little to no weight because it was inconsistent with Dr. Moon's examination and it was inconsistent with the two subsequent evaluations Dr. Moon performed at the request of DSHS. Tr. 32-33. As a psychologist, Dr. Moon is an acceptable medical source. 20 C.F.R. §§ 404.1502(a)(7), 416.905(a)(7).

The ALJ's first reason for rejecting the opinion, that it was inconsistent with Dr. Moon's examination, is not supported by substantial evidence. The ALJ stated that "the examination found only deficits in fund of knowledge." Tr. 32. However, the examination showed that Plaintiff appeared unkempt, his speech was rambling, his mood was anxious/fearful, his affect was anxious, and his fund of knowledge was not within normal limits. Tr. 259-60. While Plaintiff's orientation was found to be within normal limits, Dr. Moon stated that Plaintiff "[d]idn't know the 8th month was called August." Tr. 260. Additionally, his concentration was found to be within normal limits, yet he could not spell world backwards and he forgot the second step of his three step instruction. Tr. 260. Therefore, while Dr. Moon's findings were within normal limits, it does not mean Plaintiff's examination was free of error. This does not support the ALJ's finding that the only deficits were in fund of knowledge.

The ALJ's second reason for rejecting the opinion, that it was inconsistent with the two subsequent opinions from Dr. Moon, is not specific and legitimate. Inconsistency with the majority of objective evidence, including other opinions, is a specific and legitimate reason for rejecting a physician's opinion. *Batson*, 359 F.3d at 1195. However, here, the ALJ erred in his treatment of Dr. Moon's two subsequent opinions and his practice of assigning a "moderate limitation" a meaning equivalent to "no limitation." *See infra*. Therefore, the ALJ is to readdress Dr. Moon's August 1, 2012 opinion when he readdresses Dr. Moon's other opinions upon remand.

Dr. Moon completed a second evaluation for DSHS on July 15, 2013. Tr. 307-11. Dr. Moon diagnosed Plaintiff with learning disorder not otherwise specified by history and a rule out diagnosis of mood disorder not otherwise specified. Tr. 308. Dr. Moon stated that "[t]here is an element of grandiosity and impulsivity in his presentation." Tr. 307. Dr. Moon opined that Plaintiff had a marked limitation in the ability to be aware of normal hazards and take appropriate precautions and a moderate limitation in an additional eleven basic work activities, including in areas of persistence and social functioning. Tr. 309. The ALJ gave the opinion some weight stating, "[T]his assessment is more consistent with the claimant's treatment records and his performance during mental status examination, which shows that his concentration, memory, and social functioning are generally intact, with some difficulties with labile affect and tearful presentation." Tr. 33.

Plaintiff challenges the ALJ's treatment of this opinion by asserting that he failed to account for the opined limitations in Plaintiff's residual functional capacity determination, arguing that even moderate limitation in the areas opined would result in an inability to sustain competitive employment. ECF No. 14 at 14-16. Plaintiff refers to Social Security Ruling (S.S.R.) 85-15 in his argument, asserting that a reliance on the ruling would lead to a finding of disabled. *Id*. at 14.

However, the Ninth Circuit has found that S.S.R. 85-15 does not apply to cases in which both exertional and nonexertional impairments are at issue. *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995). Since Plaintiff's alleged impairments include exertional impairments, such as back pain, S.S.R. 85-15 does not apply.

Despite Plaintiff's mislaid reliance on S.S.R. 85-15, he accurately points out that the ALJ's residual functional capacity determination failed to account for the moderate limitations supplied in the July 15, 2013 opinion, effectively rejecting a portion of the opinion without explanation. The residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p. Here, Dr. Moon opined moderate limitations, defined as "significant limits on the ability to perform one or more basic work activity," in the abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without specified limitations, to communicate and perform effectively in a work setting, to complete a normal work day and workweek without interruptions from psychologically based symptoms, and to maintain appropriate behavior in a work setting. Tr. 309. These limitations are absent from the ALJ's residual functional capacity determination. Tr. 29. Defendant argues that these limitations were addressed in the ALJ's decision and the residual functional capacity determination represents the ALJ's translation of medical opinions into a residual functional capacity assessment. ECF No. 16 at 8-9. Defendant is effectively asserting that a "moderate limitation" is synonymous with "no limitation."

Despite Defendant's argument, the Court finds that the ALJ's translation of Dr. Moon's opined "moderate limitation" to "no limitation" not supported in the record. The form included the option of "None or Mild." Tr. 309. Therefore, had Dr. Moon found a lack of limitation resulting from Plaintiff's mental impairments,

the psychologist would have checked the "None or Mild" box, not the "Moderate" box. As such, the limitations were rejected without comment by the ALJ, which is an error. Therefore, this case is remanded for the ALJ to properly address Dr. Moon's July 15, 2013 opinion.

Dr. Moon completed a third evaluation for DSHS on June 9, 2015. Tr. 631-36. Dr. Moon diagnosed Plaintiff with an unspecified depressive disorder and specific learning disorder with impairments in reading, writing expression, and mathematics by history. Tr. 633. When discussing the depression diagnosis, Dr. Moon stated that the "depression appears to be in a state of partial remission with antidepressant medication. He continues to have problems with sleeping, maintaining focus and making decision [sic] which would interfere with his ability to work reliably." *Id*. Dr. Moon opined that Plaintiff had moderate limitations in twelve out of the thirteen basic work activities addressed on the form. Tr. 633-34. The psychologist rated the overall severity based on the combined impact of all diagnosed mental impairments to be moderate. Tr. 634. A moderate limitation "means there are significant limits on the ability to perform one or more basic work activity." Tr. 633. The ALJ gave the opinion some weight, finding it "consistent with the mental status examination that was within normal limits." Tr. 33. However, the ALJ did "not adopt his finding that the claimant's symptoms 'would interfere with his ability to work reliably,' as this is inconsistent with moderate functional limitations and the claimant's performance during mental status examination." *Id*.

Again, the ALJ's determination that "moderate limitations" equates to "no limitations" is not supported by substantial evidence. *See supra*. The form Dr. Moon completed included a rating of "None to Mild." Tr. 633. If Dr. Moon was of the opinion that Plaintiff's impairments did not interfere with his ability to work, the psychologist would have indicated so by checking the box "None to Mild," and not "Moderate." As such, the case is remanded for the ALJ to further address Dr.

Moon's June 2015 opinion.

### B. Jan Kouzes, Ed.D.

On January 23, 2012, Dr. Kouze completed an evaluation of Plaintiff at the request of DSHS. Tr. 303-06. She diagnosed Plaintiff with panic disorder without agoraphobia, major depressive disorder, and cannabis abuse. Tr. 303. When asked what Plaintiff was capable of doing despite his mental health impairments, Dr. Kouzes asked Plaintiff three questions and quoted his responses. Tr. 305. The ALJ gave Dr. Kouzes' mental evaluation little weight because he did not provide a residual functional capacity statement, but "instead merely restating the claimant's reports regarding his activities." Tr. 33.

The ALJ's conclusion, that Dr. Kouzes failed to provide a residual functional capacity assessment, is supported by the record. Dr. Kouzes asked three questions: "How do you like to spend your spare time?"; "What are your hobbies?"; and "What can you still do?" Tr. 305. He then quoted Plaintiff's responses: "I like to watch tv, I think and I tinker."; "I like to make little gadgets or toys."; and "I don't do much. I take care of myself. I watch tv, I like to go to the casino. I try to do odd jobs to make a little money. I watch tv. I like to tinker." *Id*. This is not a residual functional capacity assessment. However, this does not negate the observations Dr. Kouzes made in his Mental Status Exam. Tr. 305-06. Therefore, upon remand the ALJ will still consider Dr. Kouzes' observations throughout the five step sequential evaluation.

### C. Jason Roberts, ARNP

Nurse Roberts was Plaintiff's treating provider beginning in July 2014. Tr. 557. On June 2, 2015, Nurse Roberts completed a Physical Functional Evaluation form for DSHS. Tr. 622-30. He stated that Plaintiff's diagnoses were back pain, lipoma, psychosis, depression, and erectile dysfunction. Tr. 623. He stated that Plaintiff's back pain resulted in mild limitations in sitting, standing, walking lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. *Id*.

He stated that Plaintiff's psychosis resulted in a marked[2] to severe[3] limitation in communicating. *Id*. He opined that Plaintiff could perform light work in a regular predictable manner and that the limitation was "lifelong" with available medical treatment. Tr. 624. The ALJ addressed Mr. Roberts' opinion as follows:

> Some weight is given to the June 2015 evaluation by Jason Roberts, A.R.N.P. (Ex. 21F). Mr. Roberts opined that the claimant can perform light work, citing examination findings mild lumbar spine range of motion limitations but intact strength, reflexes, and sensory functioning. This functional assessment is consistent with the record as whole and his clinical observations. While Mr. Roberts is not an acceptable medical source, I note that he has treated the claimant, and his opinions are supported by objective findings. He opined that the claimant's physical conditions cause mild to no limitations.

Tr. 32. Here, the ALJ failed to address Nurse Roberts' statement regarding Plaintiff's diagnosis of psychosis. Additionally, the residual functional capacity determination fails to address any deficits in Plaintiff's ability to communicate. Tr. 29. Therefore, the ALJ rejected this portion of Nurse Roberts' opinion without comment.

This is error under S.S.R. 96-8p. (The residual functional capacity assessment "must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). While Nurse Roberts' opinion does not qualify as a medical source opinion because he is not an acceptable medical source, 20 C.F.R. §§ 404.1527(a), 416.927(a), the ALJ's failure to address the opined limitations in Plaintiff's ability to communicate due to

---

[2] A marked limitation is defined as a "[v]ery significant interference with the ability to perform one or more basic work-related activities." Tr. 623.

[3] A severe limitation is defined as an "[in]ability to perform one or more basic work-related activities." Tr. 623.

his psychosis was an error. This was Plaintiff's most limiting impairment according to Nurse Roberts. Tr. 623. During the physical examination, the only abnormal observation by Nurse Roberts was regarding Plaintiff's psychological state. Tr. 629. Nurse Roberts stated that Plaintiff appeared anxious and that he had an inappropriate mood and affect described as expansive, flight of ideas, forgetful, and grandiosity. *Id*. As such, the ALJ will readdress Nurse Roberts' opinion regarding Plaintiff's ability to communicate upon remand.

### D. Candice Webb, M.S., M.H.P

Ms. Webb completed an evaluation for DSHS on June 6, 2012. Tr. 267-70. She listed his diagnoses as major depressive disorder, anxiety disorder, cannabis abuse, borderline personality traits, and rule out borderline personality disorder. Tr. 267. When asked about the effect of Plaintiff's symptoms on his ability to work, Ms. Webb stated the following, including quotes from Plaintiff:

> "Can't remember what I was supposed to do and can't stay focused". Feels that his depression turns to anger at work because he can't stand 'stupid people'. Will stress out easily. His depression makes it difficult to stay on task and concentrate on the task at hand. He has difficulties understanding simple questions asked of him or filling out any type of questionnaire or handout. He would not be able to read policies/procedures of the company he works for. He is unable to write complete sentences or spell words correctly. He would not be able to keep a job that required any writing, use of a computer, math skills, etc. Having delusional thinking that he is a psychic and that he has an 'influence' on the people he is around may impair his relationships with co-workers and customers.

Tr. 268-69. When asked about his residual capacity, Ms. Webb quoted Plaintiff as stating "It seems like I've been too busy with appointments to do things that I enjoy doing." Tr. 269. The ALJ gave the evaluation little weight because Ms. Webb did not provide a residual functional capacity assessment, but simply quoted Plaintiff's statements and because it was inconsistent with the more recent

evidence and opinions showing improvement in Plaintiff's condition and partial remission of the depression. Tr. 33.

Considering this case is being remanded for the ALJ to address other opinions concerning Plaintiff's mental health impairments and their resulting limitations, the ALJ is instructed to readdress Ms. Webb's DSHS evaluation.

**2.      Step Two**

Plaintiff challenges the ALJ's step two determination arguing that he erred by failing to find his psychosis a severe impairment. ECF No. 14 at 6-10.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).

The ALJ found Plaintiff's psychosis to be a nonsevere impairment, finding that Plaintiff's "psychotic symptoms are transient in nature and do not consistently cause more than minimal functional limitations." Tr. 26. Plaintiff argues that if Nurse Roberts' opinion regarding the functional effect to these limitations were properly credited, psychosis would be a severe impairment. ECF No. 14 at 10-11. Considering the ALJ has been instructed to readdress Nurse Roberts' opinion on remand, the ALJ will further address Plaintiff's step two impairments.

**3.      Develop the Record**

Plaintiff argues that the ALJ erred by not obtaining intellectual testing results. ECF No. 14 at 5-7.

"In Social Security cases the ALJ has a special duty to fully and fairly

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (*citing Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). This duty is heightened when a claimant is unrepresented during the administrative phase of his case. *See Widmark v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006) (where claimant is unrepresented "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," as well as remain "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ has duty "to fully and fairly develop the record and to assure that the claimant's rights are considered," and "must be especially diligent in exploring for all the relevant facts" when claimant is not represented).

Despite the ALJ's duty to develop the record, it remains the claimant's burden to prove that he is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a). "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate[,] or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."). An ALJ may fulfill his duty to develop the record by continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Smolen*, 80 F.3d at 1288.

Here, Plaintiff was unrepresented at the hearing and there were diagnoses in the record of learning disabilities based on Plaintiff's reported history. Tr. 308, 633. The ALJ found a learning disorder as a severe impairment at step two. Tr. 25. There is no intellectual testing in the record to support a finding of a learning disorder. Considering the case is being remanded for the ALJ to further address

Plaintiff's mental health impairments and their resulting limitations, the ALJ is to send Plaintiff for a consultative examination that includes intellectual testing and call a psychological expert to testify at remand proceedings unless sufficient evidence and opinions supplementing the record on this issue are otherwise entered in evidence.

### 4. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that his symptom statements were not entirely consistent with the evidence. ECF No. 14 at 18-21.

It is generally the province of the ALJ to make determinations regarding the credibility of a claimant's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health*

*& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to determination if he has jurisdiction to decide the DIB claim, to properly address the opinion evidence, to make a new step two determination, to send Plaintiff for a consultative examination including intellectual testing, and to determine the supportability of Plaintiff's symptom statements. The ALJ will also need to supplement the record with any outstanding evidence and call a psychological and vocational expert to testify at remand proceedings.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

1     The District Court Executive is directed to file this Order and provide a copy
2 to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff**
3 and the file shall be **CLOSED**.
4     **IT IS SO ORDERED.**
5     DATED July 2, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE